# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER MATHEWS and
KERRY MATHEWS, individually,
and as parents and natural
guardians of G.M., a minor,

       Plaintiffs,

       v.

ABINGTON HEIGHTS SCHOOL
DISTRICT,

       Defendant.

CIVIL ACTION NO. 3:22-CV-00959

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

This is a federal civil rights action, brought by plaintiffs Christopher and Kerry Mathews, individually and as parents and natural guardians of their minor child, G.M. Appearing through counsel, the plaintiffs commenced this action by filing a complaint in state court on May 26, 2022. (Doc. 2.) The lone named defendant, Abington Heights School District (the "School District"), timely removed the action to this court on June 15, 2022. (Doc. 1.)

The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. The defendant has filed a Rule 12(b)(6) motion to

dismiss the complaint for failure to state a claim upon which relief can be granted. (Doc. 5.) The motion is fully briefed and ripe for decision. (Doc. 6; Doc. 8; Doc. 9.)

## I.   ALLEGATIONS OF THE COMPLAINT

In December 2021, G.M. was a 10th grade student at Abington Heights High School. He was and continues to be an exemplary honor roll student with no disciplinary history at Abington Heights High School.

In the early morning hours of December 20, 2021, shortly after midnight, G.M.'s parents received a telephone call from police requesting that they meet with officers outside their home to discuss an issue involving G.M. and an anonymous tip that had been submitted through the Safe2Say Something anonymous reporting system ("S2SS").[1]

G.M.'s parents met with two police officers inside the garage of their home. During that meeting, the police officers informed the parents what the S2SS anonymous reporting system was, and they informed G.M.'s parents that an anonymous tip about G.M. had been submitted.

---

[1] S2SS is an anonymous reporting system established by the Commonwealth of Pennsylvania for individuals who may be a risk to themselves or others, and any member of a school community, including students, can make a report anonymously via an app, through a website at Safe2SayPA.org, or by calling 1-844-SAF2SAY (1-844-723-2729).

Specifically, the police officers informed G.M.'s parents that an anonymous tip was submitted indicating that G.M. had made statements that he had two firearms in his possession and that he was going to Abington Heights High School on Monday, December 20, 2021, to "shoot people on his list."

At the time, G.M. had no access to any firearms. In fact, he had been in quarantine due to COVID-19 exposure and would not be eligible to return to school until December 22, 2021.

The police officers requested to speak to G.M., who told the officers that he did not have access to any firearms, that he never made any statements about shooting anyone, and that he never created a list of people he intended to shoot at Abington Heights High School.

At that time, the police officers indicated that they believed the anonymous tip to have been false. But the plaintiffs were also informed that G.M. was considered suspended from the school pending the school's investigation. They were advised that they should await a telephone call from the superintendent of the School District before G.M. could return to school.

Shortly after the police officers departed, G.M.'s mother advised

him to contact his friends in an attempt to identify who made the anonymous false tip via S2SS, and why they made that tip. G.M. spoke with his fellow classmates, L.R. and P.M., both minors, who informed G.M. that another classmate, S.J., had "joked" about submitting an anonymous false tip regarding G.M. via S2SS. According to L.R. and P.M., they had been engaged in a game of Fortnite[2] together with G.M. and S.J., which led to a plot to make an anonymous false tip about G.M.

During a game of Fortnite, the four players discussed how the high school was "a ghost town" on the prior Friday night due to threats that had circulated via social media regarding possible mass shootings in schools across the nation.[3] At that point in the conversation, S.J. stated that he should submit an anonymous false tip regarding G.M. via S2SS.

---

[2] *See generally Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 378 (E.D. Pa. 2020) ("Fortnite is a battle royale video game, a 'genre that blends the survival, exploration and scavenging elements of a survival game with last-man-standing gameplay.' In this format, 'up to 100 players, alone, in pairs or in groups, compete to be the last player of group alive' by using weapons and other forms of violence to eliminate other players.") (citation omitted).

[3] *See, e.g.*, Hannah Natanson & Laura Meckler, *Threats, Hoaxes Add to School Stressors*, Wash. Post, Dec. 21, 2021, at A1 ("[I]n a 'challenge' last week that swept the social network TikTok, students promoted school shootings to take place this past Friday—for many, the last day of class before winter break. Schools from D.C. to California closed for the day or added police.").

S.J. then recorded and shared footage of himself via the Snapchat application making the anonymous false tip, but the recording disappeared once it was viewed, before the other players could record or save it.[4]

At approximately 1:30 a.m. on December 20, 2021, L.R. and P.M. repeated their statements to a police officer regarding S.J.'s plan to submit an anonymous tip regarding G.M.

That same day, G.M.'s mother received a telephone call from the Vice Principal at Abington Heights High School,[5] who indicated that, after having interviewed S.J., and despite S.J.'s statements in his own defense, the Vice Principal ultimately believed the tip to be false and G.M. to be the "victim." Nevertheless, and despite his innocence, the Vice Principal suggested that G.M. refrain from returning to school until after the impending winter holiday vacation, and she indicated that she was continuing to investigate and interview students involved.

---

[4] *See generally Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 141 S. Ct. 2038, 2043 (2021) ("Snapchat [is] a social media application that allows users to post photos and videos that disappear after a set period of time.").

[5] The complaint does not identify the non-party vice principal, but merely refers to her by title.

Even though police and the Vice Principal had already deemed the tip to be false, she still chose to conduct interviews of certain students involved in the incident, including L.M. When interviewing L.M., the Vice Principal asked open-ended questions such as "Does G.M. make you nervous?" and "Do you feel as though G.M. would shoot someone?" The events of December 20, 2021, were not discussed with L.M. during this interview; instead, the focus was on the unfounded possibility that G.M. had a propensity for violence. Upon information and belief, the plaintiffs allege that none of the students interviewed regarding this incident were advised of the sensitivity of the matter and the damage it could cause to G.M.

On December 21, 2021, G.M.'s mother was contacted by the Vice Principal, who told her that G.M. had been "cleared of the matter" and that School District faculty or staff felt that G.M. was "the victim." The Vice Principal further informed G.M.'s mother that S.J. had been suspended and that G.M.'s suspension was being lifted and his absences attributed to COVID-19, and she instructed G.M.'s mother to contact her immediately if G.M. faced any negative repercussions as a result of the incident.

Faculty and staff were not informed of G.M.'s exoneration at that point in time.

G.M. was able to return to school on December 22, 2021. Naturally, he was extremely nervous to return to school, as he was unsure how his fellow students would respond to his presence considering the false tip.

G.M. was contacted by a friend and fellow student, K.B., who informed G.M. that an unidentified student was asking other students "Where is your blue shirt so that G.M. does not shoot you?"

G.M.'s mother immediately tried to contact the Vice Principal, who was unavailable, and she ultimately spoke with the Principal at Abington Heights High School.[6] The Principal assured G.M.'s mother that the comments would be investigated and addressed, and he acknowledged that wearing blue was a detail mentioned in the false tip regarding G.M.

G.M.'s mother grew concerned that these specific details had been shared within the high school, as she believed rumors about G.M. being a potential school shooter could essentially destroy G.M.'s life.[7] At that

---

[6] The complaint does not identify the non-party principal, but merely refers to him by title.

[7] It is not clear from the complaint whether she expressed this concern to the Principal during that phone call.

point, the Principal informed G.M.'s mother that he would not send an email or text message to faculty or staff for fear of "calling more attention" to the situation, but that faculty and staff at Abington Heights High School would be made aware that G.M. was innocent.

When G.M. returned to school on December 22, 2021, an unidentified student addressed him as "shooter" during first period.

During third period that same day, in a class of approximately twenty students, G.M. was addressed by his third period teacher, identified only as "Teacher," who said: "I am hearing rumors. Are they true?"[8] Teacher initiated a dialogue between the students in the classroom regarding the situation, and G.M.'s third period classmates all began to chime in regarding what they had heard about the situation. When G.M. attempted to defend himself, Teacher interjected and began to lecture G.M., stating "What were you thinking?" and insinuating that S.J.'s false tip that G.M. had made certain threats was true. Another teacher then entered the classroom, at which point Teacher pointed to G.M. and asked: "Did you hear what this kid did?"

---

[8] The complaint does not identify the non-party teacher, but merely refers to him by position title.

Teacher's statements created a ripple effect, and during sixth period that same day, G.M. was approached by a group of students who asked him if the rumors were true, at which point he had to explain the situation and reiterated that the rumors *were not* true. As G.M. was leaving school that day, another student yelled at G.M. in the hallway, calling him "shooter."

G.M.'s mother once again tried to contact the Vice Principal, who was unavailable, and she once again spoke with the Principal. G.M.'s mother expressed her concern that faculty and staff continued to perpetuate the incorrect belief that G.M. had made statements regarding a potential school shooting. The Principal promised that faculty and staff would be stationed in the hallways so G.M. was not harassed by his fellow students. The Principal, however, refused to release any information to G.M.'s mother regarding disciplinary action being taken against S.J., other than noting that students in this type of situation could face a maximum of ten days of suspension, and that the School District would need to determine if any additional action needed to be taken.

While G.M.'s mother was speaking with the Principal, the Vice Principal left a voicemail for her apologizing for G.M.'s "experience" that

day. In that voicemail, the Vice Principal stated that she did not address the specific statements made to G.M. that day because she was "unable to get that kid before the day ended." She further stated that she did not think this was "a widespread situation" because she had only spoke with two students about it.

G.M.'s mother than contacted the Assistant Principal at Abington Heights High School[9] and once again expressed her concerns that G.M.'s reputation and well-being had suffered irreparable damage as a result of the incident and the manner in which it was handled by the high school and the School District. In light of the repeated requests by G.M.'s mother, the Assistant Principal agreed to send an e-mail to all faculty and staff of Abington Heights High School exonerating G.M.

The Assistant Principal subsequently sent an email to faculty and staff on December 23, 2021, stating that the "Safe2Say report accusing [G.M.] of possibly threatening the school" was investigated and found to be false. Unfortunately, by that time, false rumors about G.M. had already spread throughout the student population of Abington Heights

---

[9] The complaint does not identify the non-party assistant principal, but merely refers to him or her by title.

High School.

Before the impending winter holiday vacation, G.M. approached Teacher, once again informed Teacher that he was in fact innocent, and informed Teacher that he did not appreciate the way Teacher handled the situation in third period that day, December 23, 2021. Teacher admitted to mishandling the situation and apologized.

The complaint alleges that, as a result of the acts or omissions of the School District, G.M.'s reputation has been forever tarnished by false rumors that he plotted to initiate a school shooting. The complaint further alleges that, since December 20, 2021, G.M. has exhibited signs or symptoms of anxiety and depression, including fatigue, insomnia, loss of interests, low self-esteem, and lack of concentration, and contributing to absenteeism and tardiness at school. G.M.'s previously excellent academic performance has suffered as well, with his grades decreasing drastically, endangering his eligibility for participation in a "Level Up Lackawanna" program that allows high-achieving students to earn an early associate degree in select majors by the time they graduate from

high school through a combination of dual enrollment classes.[10]

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual

---

[10] *See generally* Lackawanna Coll., Level Up Program, https://www.lackawanna.edu/offices-and-departments/admissions/level-up/ (last visited Mar. 21, 2023).

allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.   DISCUSSION

The plaintiffs have filed a five-count complaint against the School District only.[11] It does not name *any* individual defendants. In Count I, the plaintiffs assert a § 1983 Fourteenth Amendment equal protection claim. In Count II, the plaintiffs assert a § 1983 Fourteenth Amendment substantive due process claim. In Count III, the plaintiffs assert a state-law defamation claim. In Count IV, the plaintiffs assert a Fourteenth Amendment "stigma plus" procedural due process claim. In Count V, the

---

[11] In the complaint, the five counts are misnumbered, with two counts labeled "Count II" and no "Count V." In their briefs, both sides have renumbered the counts, referring to Counts I, II, III, IV, and V in sequence, and we have adopted this numbering for present purposes.

plaintiffs assert a state-law false light invasion of privacy claim. For relief, the complaint demands an award of compensatory and punitive damages.

## A. Punitive Damages

The complaint seeks an award of punitive damages against the School District on each of its several § 1983 and state-law claims. As a municipality, however, the School District is immune from punitive damages under both § 1983 and state tort law. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Marko ex rel. Marko v. City of Philadelphia*, 576 A.2d 1193, 1194 (Pa. Commw. Ct. 1990) (citing 42 Pa. Cons. Stat. Ann. § 8553(c)); *Bensalem Twp. v. Press*, 501 A.2d 331, 338–39 (Pa. Commw. Ct. 1985). (*See* Doc. 6, at 16.) Accordingly, the plaintiffs' demands for punitive damages will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## B. State-Law Claims

In Counts III and V, the plaintiffs assert state-law defamation and false light invasion of privacy tort claims against the School District. But any defamation claim against the School District is barred pursuant to

the immunity conferred by the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), 42 Pa. Cons. Stat. § 8541 *et seq. See Martin v. City of Reading*, 118 F. Supp. 3d 751, 779–80 (E.D. Pa. 2015); *Adams v. Luzerne Cnty.*, 36 F. Supp. 3d 511, 525 (M.D. Pa. 2014); *Klump v. Nazareth Area Sch. Dist.*, 425 F. Supp. 2d 622, 638 (E.D. Pa. 2006). Likewise, the school district is immune to invasion of privacy by false light claims under the PPSTCA. *See Klump*, 425 F. Supp. 2d at 636. Accordingly, the plaintiffs' state-law claims for defamation (Count III) and false light invasion of privacy (Count V) will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## C. § 1983 Substantive Due Process

In Count II of the complaint, the plaintiffs assert a § 1983 Fourteenth Amendment substantive due process claim.

"Substantive due process is a component of the Fourteenth Amendment that protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 680 (3d Cir. 2022) (brackets and internal quotation marks omitted).

> To prevail on a substantive due process claim challenging a state actor's conduct, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies. Whether a property interest is protected for purposes of *substantive due process* is a question that is not answered by reference to state law. Rather, for a property interest to be protected for purposes of *substantive due process*, it must be "fundamental" under the United States Constitution.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 234 n.12 (3d Cir. 2006) (citation and internal quotation marks omitted); *see also Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 155–56 (3d Cir. 2018).

It is well established that "there is no fundamental right to a public education under the United States Constitution." *Fiedler v. Stroudsburg Area Sch. Dist.*, 427 F. Supp. 3d 539, 555 (M.D. Pa. 2019); *see also Vicky M. v. Ne. Educ. Intermediate Unit 19*, 486 F. Supp. 2d 437, 456 (M.D. Pa. 2007) ("[T]he substantive component of the Due Process Clause does not protect educational interests."). *See generally Newark Cab Ass'n*, 901 F.3d at 155 ("[T]he only protected property interests we have thus far deemed fundamental involved ownership of real property."). Thus, while a state-created right to a public education may be protected by *procedural* due process, it may not form the foundation of a substantive due process

claim. *See Doe #1 v. Delaware Valley Sch. Dist.*, 572 F. Supp. 3d 38, 67–68 (M.D. Pa. 2021).

Accordingly, the plaintiffs' § 1983 substantive due process claim (Count II) will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### D. § 1983 "Stigma Plus" Procedural Due Process

In Count IV of the complaint, the plaintiffs assert a § 1983 Fourteenth Amendment "stigma plus" procedural due process claim.

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill*, 455 F.3d at 233–34.

In this count, the plaintiffs allege that G.M. suffered harm to his reputation, which in turn affected his ability to perform his "job" of attending school as a result of the School District's mishandling of investigation into and communication about the December 20, 2021,

incident, thus depriving him of a liberty interest protected by the due

process clause.[12] But, as the Third Circuit has explained,

> reputation *alone* is not an interest protected by the Due
> Process Clause. Rather, to make out a due process
> claim for deprivation of a liberty interest in reputation,
> a plaintiff must show a stigma to his reputation *plus*
> deprivation of some additional right or interest. We
> have referred to this as the "stigma-plus" test.

*Hill*, 455 F.3d at 236 (footnote, citations, and internal quotation marks

omitted); *see also D&D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 552

Fed. App'x 110, 113 (3d Cir. 2014) ("[R]eputation damage is not

actionable unless it occurs in the course or is accompanied by a change or

extinguishment of a right or status guaranteed by state law or the

Constitution.") (internal quotation marks omitted). "[A] *sine qua non* of a

'stigma-plus' suit is that the 'plus' must be the result of state action

---

[12] The plaintiffs do not allege that G.M. was actually excluded from attending school, and thus no protected state-created property interest is at issue. *See generally Oberheim v. Bason*, 565 F. Supp. 3d 607, 615–16 (M.D. Pa. 2021) ("The Supreme Court has long held that pursuant to state law establishing a public school system and requiring children to attend, students possess a legitimate entitlement to public education as a property interest which is protected by the Due Process Claus. However, . . . [s]o long as administrative policies and actions do not exclude a student from class, they do not implicate the property interest in public education.") (footnotes, brackets, and internal quotation marks omitted).

directly affecting the plaintiff's rights or status under the law. The fact that state action may be involved in the 'stigma' (*i.e.*, defamation) is not of itself sufficient to maintain the action." *Sullivan v. State of New Jersey*, 602 F. Supp. 1216, 1222 (D.N.J. 1985).

Here, the "plus" proffered by the plaintiffs amounts to emotional distress which then allegedly resulted, only indirectly, in G.M.'s diminished academic performance. Such emotional distress or psychological harm is simply "too ethereal" to satisfy the "plus" element of the "stigma-plus" test. *See Good v. City of Sunbury*, 352 Fed. App'x 688, 692 (3d Cir. 2009); *see also Baraka v. McGreevey*, 481 F.3d 187, 209 & n.17 (3d Cir. 2007); *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1076, 1078 (3d Cir. 1997). The reputational damage caused by the School District's allegedly mishandled investigation and communication with respect to G.M. and the December 20, 2021, incident simply does not rise to the level of a constitutional deprivation. *See Marcolongo v. Sch. Dist. of Philadelphia*, No. Civ.A. 98-5196, 1999 WL 1011899, at *8 (E.D. Pa. Nov. 5, 1999), *aff'd*, 262 F.3d 404 (3d Cir. 2001) (unpublished table decision).

Accordingly, the plaintiffs' § 1983 "stigma plus" procedural due

process claim (Count IV) will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### E. § 1983 Equal Protection

In Count I of the complaint, the plaintiffs assert a § 1983 Fourteenth Amendment "class of one" equal protection claim. *See generally Village of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000) (per curiam) (recognizing "equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").[13] The plaintiffs allege that the

---

[13] "A plaintiff stating a claim under the Equal Protection Clause must allege that [(1)] he has been treated differently because of his membership in a suspect class or [(2)] his exercise of a fundamental right, or [(3)] that he has been treated differently from similarly-situated others and that this differential treatment was not rationally related to a legitimate state interest." *Young v. New Sewickley Twp.*, 160 Fed. App'x 263, 266 (3d Cir. 2005). Here, the plaintiffs do not allege G.M.'s membership in a suspect class, nor do they identify any exercise of a fundamental right that may have given rise to his alleged treatment. Much like we previously noted above in the context of substantive due process, there is likewise "no fundamental right to a public education under the United States Constitution" in the equal protection context. *Thomas v. E. Orange Bd. of Educ.*, 998 F. Supp. 2d 338, 352 (D.N.J. 2014). In their brief in opposition, the plaintiffs limit their discussion of this claim to a "class of one" theory of liability.

School District "singling out" of G.M. for investigation of the anonymous tip, as well as the continued commentary regarding G.M.'s culpability among unspecified faculty, staff, and students despite his exoneration,[14] constituted a violation of his equal protection rights. The plaintiffs further allege that the School District's treatment of G.M. was unfair, selective, and discriminatory in nature. The plaintiffs allege that the School District's continued investigation of the anonymous tip despite already having determined that the tip was false, as well as the School District's continued communications regarding G.M.'s culpability,[15] were

---

[14] We note that, other than the comments made by G.M.'s unidentified third period teacher, the complaint pleads no facts whatsoever regarding such commentary by any School District administrator, faculty, or staff.

[15] We note that, other than an email by the Assistant Principal advising faculty and staff that the S2SS report accusing G.M. of making threats had been investigated and found to be false, the complaint pleads no facts whatsoever regarding any such communication by the School District or its administrators. Indeed, the gist of the facts alleged in the plaintiffs' complaint appears to be not that school administrators communicated false or defamatory information about G.M., but that they did not immediately and affirmatively communicate their finding that the anonymous tip about G.M. was false, passively allowing unfavorable and untrue rumors and innuendo about G.M. to circulate among members of the school community. The plaintiffs' argument in their opposition brief underscores this impression. (*See, e.g.*, Doc. 8, at 13 ("Without a fragment of poise, rationality, or professionalism, the [School District] quickly tore down the walls secluding the situation since it took

*(continued on next page)*

without legal cause and thus constituted a violation of his equal protection rights.

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. A school district is such a municipality subject to liability as a "person" under § 1983. *McGreevy v. Stroup*, 413 F.3d 359, 367–69 (3d Cir. 2005).

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy

---

no *affirmative* steps ensuring confidential maintenance.") (emphasis added); *id.* (arguing that the School District "neglected to ultimately quell the issue through a simple mass text and/or e-mail to staff and faculty elucidating [G.M's] blamelessness").)

statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249.

Municipalities are only subject to § 1983 liability for three sorts of practices.

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy[,] but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)

(citation, footnote, brackets, and internal quotation marks omitted).

With respect to the first category, "[a] plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). Here, the complaint has failed to identify any affirmative School District policy at all, nor any facts to suggest a causal link between such a policy and any alleged injury to G.M.[16]

---

[16] Citing *Leatherman v. Tarrant County Narcotic Intelligence and Coordination Unit*, 507 U.S. 163 (1993), the plaintiffs argue in their opposition brief that they are not subject to a heightened pleading standard, and thus they need not specify any policy, custom, or practice to plausibly state a *Monell* municipal liability claim against the School District. The plaintiffs, however, misapprehend the holding of *Leatherman* and its interplay with the Supreme Court's subsequent decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

> Though *Leatherman* . . . makes plain that § 1983 claims are not subject to a heightened pleading standard, *Iqbal*'s unambiguous extension of *Twombly* to 'all civil actions' leaves the ordinary notice pleading requirement intact for those claims. . . . Under this standard, a pleading may not simply offer labels and conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rather, factual allegations must be enough to raise a right to relief above the speculative level. . . . Essentially, a plaintiff must
>
> *(continued on next page)*

With respect to the second category, "[a] course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanently and well-settled as to virtually constitute law." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). As with an affirmative policy, "[t]o satisfy the pleading standard, [a plaintiff] must identify a custom . . . and specify what exactly that custom . . . was." *Id.* Here, the complaint has failed to plead any facts to identify such a custom. Moreover, "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker." *Id.* As the Supreme Court of the United States has instructed,

> [t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing *final* government policy respecting such activity before the municipality can be held liable.

---

> provide enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.

*Washington v. City of Philadelphia*, Civil Action No. 11-3275, 2012 WL 85480, at *4 (E.D. Pa. Jan. 11, 2012) (citations, brackets, and internal quotation marks omitted). As discussed in the accompanying text and that which follows, the plaintiffs have failed to satisfy the minimum requirements to state a plausible *Monell* municipal liability claim.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986) (emphasis added, citation and footnotes omitted). "The final policy maker for a school district in Pennsylvania is typically the school board or the superintendent." *E.N. v. Susquehanna Twp. Sch. Dist.*, No. 1:09-CV-1727, 2011 WL 3608544, at *8 (M.D. Pa. July 5, 2011); *see also Flood v. Sherk*, 400 F. Supp. 3d 295, 307–08 (W.D. Pa. 2019) (district school board had final policymaking authority over student behavior and discipline); *Goodwin v. Pennridge Sch. Dist.*, 309 F. Supp. 3d 367, 379 (E.D. Pa. 2018) (superintendent); *Dawn L. v. Greater Johnstown Sch. Dist.*, 614 F. Supp. 2d 555, 570–71 (W.D. Pa. 2008) (superintendent). The complaint here fails to allege any conduct or knowledge and acquiescence by the school board or superintendent of the School District. It alleges only the conduct or knowledge of unnamed subordinate administrators and faculty—the high school principal, vice principal, and assistant principal, and a teacher—none of whom is a final policymaker whose conduct or knowledge may be imputed to the School District for *Monell* purposes. *See Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 144 n.1 (3d Cir. 2002) (guidance counselor did not have final policymaking authority that could bind a school district for § 1983 municipal liability purposes); *Moore v.*

*Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 668 (E.D. Pa. 2020) (high school football coach); *Flood*, 400 F. Supp. 3d at 308 (school principal); *see also id.* at 311 (finding that principal's knowledge regarding discriminatory enforcement of sexual harassment policies could not be imputed to school board).

With respect to the third and final category, "[a] municipality may be held liable under § 1983 for failure to train, monitor, or supervise [its employees], [but] only where the plaintiff can 'identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" *Watson v. Philadelphia Hous. Auth.*, 629 F. Supp. 2d 481, 487 (E.D. Pa. 2009) (quoting *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)); *see also Nawuoh v. Venice Ashby Cmty. Ctr.*, 802 F. Supp. 2d 633, 645 (E.D. Pa. 2011) ("While municipal liability under § 1983 originally hinged on affirmative policies, or customs, modern jurisprudence has extended it to a [municipality]'s failure to train, supervise and discipline its officers."). But here, the plaintiffs have "neither identified the specific training the [School

District] should have offered which would have prevented the deprivation of their constitutional rights nor established that such training was not provided." *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

Beyond vague assertions that existing policies were inadequate, *see Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (finding vague assertions of policy deficiencies insufficient to impose liability under *Monell* and § 1983), the plaintiffs point to no prior incidents from which we might reasonably infer that the School District and its governing officials had actual or constructive knowledge of the purported policy deficiencies upon which the plaintiffs' § 1983 *Monell* claims might be premised. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train. . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident

includes proof that it was caused by existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brown v. City of Pittsburgh*, 86 F.3d 263, 292–93 (3d Cir. 2009) (recognizing that, where no explicit policy is identified, "'more proof than the single incident will be necessary' to establish a causal connection between the incident and some municipal policy").

Ultimately, the complaint suggests that the School District should be held liable because the allegedly unconstitutional conduct directed at G.M. by the school administrators and faculty could have been prevented if the School District had simply implemented better policies. But policies are not deficient simply because they are not the best. *See Serafin v. City of Johnstown*, 53 Fed. App'x 211, 215 (3d Cir. 2002) ("The fact that the City's policy was not the most effective policy possible, however, does not, without more, create an unreasonable risk to detainees' safety or demonstrate the City's indifference to such a risk, and there is no 'more' here."); *see also Koreny v. Smith*, Civil Action No. 17-371, 2018 WL 1141513, at *16 (W.D. Pa. Mar. 2, 2018) ("An assertion that a constitutional injury could have been avoided with more or better training is insufficient.").

Accordingly, the plaintiffs' § 1983 equal protection claim (Count I) will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[17]

## F. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, it is not clear that amendment would be futile. Therefore, the plaintiffs will be granted leave to file an amended complaint.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss will be granted and the complaint will be dismissed for failure to state a claim

---

[17] We note that *Monell* imposes the same requirements regarding identification of a relevant municipal policy, custom, or practice with respect to the plaintiffs' § 1983 due process claims.

upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiff will be permitted to attempt to cure any pleading deficiencies and file an amended complaint. If the plaintiff fails to file a timely amended complaint, the clerk will be directed to mark this case as closed.

An appropriate order follows.

Dated: March 22, 2023                    ***s/Joseph F. Saporito, Jr.***
                                         JOSEPH F. SAPORITO, JR.
                                         United States Magistrate Judge