## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER MATHEWS and
KERRY MATHEWS, individually,
and as parents and natural
guardians of G.M., a minor,

        Plaintiffs,

        v.

ABINGTON HEIGHTS SCHOOL
DISTRICT,

        Defendant.

CIVIL ACTION NO. 3:22-CV-00959

(SAPORITO, M.J.)

### MEMORANDUM

This is a federal civil rights action, brought by plaintiffs Christopher and Kerry Mathews, individually and as parents and natural guardians of their minor child, G.M. Appearing through counsel, the plaintiffs commenced this action by filing a complaint in state court on May 26, 2022. Doc. 2. The lone named defendant, Abington Heights School District (the "School District"), timely removed the action to this court on June 15, 2022. Doc. 1.

The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. We previously considered and granted a motion to

dismiss the original complaint. *See Mathews v. Abington Heights Sch. Dist.*, No. 22-CV-00959, 2023 WL 261917 (M.D. Pa. Mar. 22, 2023), Doc. 12; *see also* Order of Mar. 22, 2023, Doc. 13. In dismissing the original complaint, we granted the plaintiffs leave to file an amended complaint and cure the pleading deficiencies identified in our dismissal opinion.

On April 12, 2023, the plaintiffs filed their amended complaint. Doc. 14. The defendant has filed a Rule 12(b)(6) motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Doc. 16. The motion is fully briefed and ripe for decision. Doc. 17; Doc. 18; Doc. 19.

## I.   ALLEGATIONS OF THE AMENDED COMPLAINT

For the most part, the amended complaint repeats the factual allegations of the original complaint verbatim, with some additional material pleaded.[1]

In December 2021, G.M. was a 10th grade student at Abington Heights High School. He was and continues to be an exemplary honor roll student with no disciplinary history at Abington Heights High School.

---

[1] The newly added material consists mostly of commentary, argument, or legal conclusions, rather than new fact allegations.

In the early morning hours of December 20, 2021, shortly after midnight, G.M.'s parents received a telephone call from police requesting that they meet with officers outside their home to discuss an issue involving G.M. and an anonymous tip that had been submitted through the Safe2Say Something anonymous reporting system ("S2SS").[2]

G.M.'s parents met with two police officers inside the garage of their home. During that meeting, the police officers informed the parents what the S2SS anonymous reporting system was, and they informed G.M.'s parents that an anonymous tip about G.M. had been submitted. Specifically, the police officers informed G.M.'s parents that an anonymous tip was submitted indicating that G.M. had made statements that he had two firearms in his possession and that he was going to Abington Heights High School on Monday, December 20, 2021, to "shoot people on his list."

At the time, G.M. had no access to any firearms. In fact, he had been in quarantine due to COVID-19 exposure and would not be eligible

---

[2] S2SS is an anonymous reporting system established by the Commonwealth of Pennsylvania for individuals who may be a risk to themselves or others, and any member of a school community, including students, can make a report anonymously via an app, through a website at Safe2SayPA.org, or by calling 1-844-SAF2SAY (1-844-723-2729).

to return to school until December 22, 2021.

The police officers requested to speak to G.M., who told the officers that he did not have access to any firearms, that he never made any statements about shooting anyone, and that he never created a list of people he intended to shoot at Abington Heights High School.

At that time, the police officers indicated that they believed the anonymous tip to have been false. But the plaintiffs were also informed that G.M. was considered suspended from the school pending the school's investigation. They were advised that they should await a telephone call from the superintendent of the School District before G.M. could return to school.

Shortly after the police officers departed, G.M.'s mother advised him to contact his friends in an attempt to identify who made the anonymous false tip via S2SS, and why they made that tip. G.M. spoke with his fellow classmates, L.R. and P.M., both minors, who informed G.M. that another classmate, S.J., had "joked" about submitting an anonymous false tip regarding G.M. via S2SS. According to L.R. and

P.M., they had been engaged in a game of Fortnite[3] together with G.M. and S.J., which led to a plot to make an anonymous false tip about G.M.

During a game of Fortnite, the four players had discussed how the high school was "a ghost town" on the prior Friday night due to threats that had circulated via social media regarding possible mass shootings in schools across the nation.[4] At that point in the conversation, S.J. stated that he should submit an anonymous false tip regarding G.M. via S2SS. S.J. then recorded and shared footage of himself via the Snapchat application making the anonymous false tip, but the recording disappeared once it was viewed, before the other players could record or save it.[5]

---

[3] *See generally Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 378 (E.D. Pa. 2020) ("Fortnite is a battle royale video game, a 'genre that blends the survival, exploration and scavenging elements of a survival game with last-man-standing gameplay.' In this format, 'up to 100 players, alone, in pairs or in groups, compete to be the last player or group alive' by using weapons and other forms of violence to eliminate other players.") (citation omitted).

[4] *See, e.g.*, Hannah Natanson & Laura Meckler, *Threats, Hoaxes Add to School Stressors*, Wash. Post, Dec. 21, 2021, at A1 ("[I]n a 'challenge' last week that swept the social network TikTok, students promoted school shootings to take place this past Friday—for many, the last day of class before winter break. Schools from D.C. to California closed for the day or added police.").

[5] *See generally Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 141 S.
*(continued on next page)*

At approximately 1:30 a.m. on December 20, 2021, L.R. and P.M. repeated their statements to a police officer regarding S.J.'s plan to submit an anonymous tip regarding G.M.

That same day, G.M.'s mother received a telephone call from the Vice Principal at Abington Heights High School,[6] who indicated that, after having interviewed S.J., and despite S.J.'s statements in his own defense, the Vice Principal ultimately believed the tip to be false and G.M. to be the "victim." Nevertheless, and despite his innocence, the Vice Principal suggested that G.M. refrain from returning to school until after the impending winter holiday vacation, and she indicated that she was continuing to investigate and interview students involved.

Even though police and the Vice Principal had already deemed the tip to be false, she still chose to conduct interviews of certain students involved in the incident, including L.M. When interviewing L.M., the Vice Principal asked open-ended questions such as "Does G.M. make you nervous?" and "Do you feel as though G.M. would shoot someone?" The

---

Ct. 2038, 2043 (2021) ("Snapchat [is] a social media application that allows users to post photos and videos that disappear after a set period of time.").

[6] The amended complaint does not identify the non-party vice principal, but merely refers to her by title.

events of December 20, 2021, were not discussed with L.M. during this interview; instead, the focus was on the unfounded possibility that G.M. had a propensity for violence. Upon information and belief, the plaintiffs allege that none of the students interviewed regarding this incident were advised of the sensitivity of the matter and the damage it could cause to G.M.

On December 21, 2021, G.M.'s mother was contacted by the Vice Principal, who told her that G.M. had been "cleared of the matter" and that School District faculty or staff felt that G.M. was "the victim." The Vice Principal further informed G.M.'s mother that S.J. had been suspended and that G.M.'s suspension was being lifted and his absences attributed to COVID-19, and she instructed G.M.'s mother to contact her immediately if G.M. faced any negative repercussions as a result of the incident.

Faculty and staff were not informed of G.M.'s exoneration at that point in time.

G.M. was able to return to school on December 22, 2021. Naturally, he was extremely nervous to return to school, as he was unsure how his fellow students would respond to his presence considering the false tip.

G.M. was contacted by a friend and fellow student, K.B., who informed G.M. that an unidentified student was asking other students "Where is your blue shirt so that G.M. does not shoot you?"

G.M.'s mother immediately tried to contact the Vice Principal, who was unavailable, and she ultimately spoke with the Principal at Abington Heights High School.[7] The Principal assured G.M.'s mother that the comments would be investigated and addressed, and he acknowledged that wearing blue was a detail mentioned in the false tip regarding G.M.

G.M.'s mother grew concerned that these specific details had been shared within the high school, as she believed rumors about G.M. being a potential school shooter could essentially destroy G.M.'s life.[8] At that point, the Principal informed G.M.'s mother that he would not send an email or text message to faculty or staff for fear of "calling more attention" to the situation, but that faculty and staff at Abington Heights High School would be made aware that G.M. was innocent.

When G.M. returned to school on December 22, 2021, an

---

[7] The amended complaint does not identify the non-party principal, but merely refers to him by title.

[8] It is not clear from the amended complaint whether she expressed this concern to the Principal during that phone call.

unidentified student addressed him as "shooter" during first period.

During third period that same day, in a class of approximately twenty students, G.M. was addressed by his third period teacher, identified only as "Teacher," who said: "I am hearing rumors. Are they true?"[9] Teacher initiated a dialogue between the students in the classroom regarding the situation, and G.M.'s third period classmates all began to chime in regarding what they had heard about the situation. When G.M. attempted to defend himself, Teacher interjected and began to lecture G.M., stating "What were you thinking?" and insinuating that S.J.'s false tip that G.M. had made certain threats was true. Another teacher then entered the classroom, at which point Teacher pointed to G.M. and asked: "Did you hear what this kid did?"

Teacher's statements created a ripple effect, and during sixth period that same day, G.M. was approached by a group of students who asked him if the rumors were true, at which point he had to explain the situation and reiterated that the rumors *were not* true. As G.M. was leaving school that day, another student yelled at G.M. in the hallway,

---

[9] The amended complaint does not identify the non-party teacher, but merely refers to him by position title.

calling him "shooter."

G.M.'s mother once again tried to contact the Vice Principal, who was unavailable, and she once again spoke with the Principal. G.M.'s mother expressed her concern that faculty and staff continued to perpetuate the incorrect belief that G.M. had made statements regarding a potential school shooting. The Principal promised that faculty and staff would be stationed in the hallways so G.M. was not harassed by his fellow students. The Principal, however, refused to release any information to G.M.'s mother regarding disciplinary action being taken against S.J., other than noting that students in this type of situation could face a maximum of ten days of suspension, and that the School District would need to determine if any additional action needed to be taken.

While G.M.'s mother was speaking with the Principal, the Vice Principal left a voicemail for her apologizing for G.M.'s "experience" that day. In that voicemail, the Vice Principal stated that she did not address the specific statements made to G.M. that day because she was "unable to get that kid before the day ended." She further stated that she did not think this was "a widespread situation" because she had only spoke with two students about it.

G.M.'s mother than contacted the Assistant Principal at Abington Heights High School[10] and once again expressed her concerns that G.M.'s reputation and well-being had suffered irreparable damage as a result of the incident and the manner in which it was handled by the high school and the School District. In light of the repeated requests by G.M.'s mother, the Assistant Principal agreed to send an e-mail to all faculty and staff of Abington Heights High School exonerating G.M.

The Assistant Principal subsequently sent an email to faculty and staff on December 23, 2021, stating that the "Safe2Say report accusing [G.M.] of possibly threatening the school" was investigated and found to be false. Unfortunately, by that time, false rumors about G.M. had already spread throughout the student population of Abington Heights High School.

Before the impending winter holiday vacation, G.M. approached Teacher, once again informed Teacher that he was in fact innocent, and informed Teacher that he did not appreciate the way Teacher handled the situation in third period that day, December 23, 2021. Teacher

---

[10] The amended complaint does not identify the non-party assistant principal, but merely refers to him or her by title.

admitted to mishandling the situation and apologized.

The amended complaint alleges that, as a result of the acts or omissions of the School District, G.M.'s reputation has been forever tarnished by false rumors that he plotted to initiate a school shooting. The amended complaint further alleges that, since December 20, 2021, G.M. has exhibited signs or symptoms of anxiety and depression, including fatigue, insomnia, loss of interests, low self-esteem, and lack of concentration, and contributing to absenteeism and tardiness at school. G.M.'s previously excellent academic performance has suffered as well, with his grades decreasing drastically, endangering his eligibility for participation in a "Level Up Lackawanna" program that allows high-achieving students to earn an early associate degree in select majors by the time they graduate from high school through a combination of dual enrollment classes.[11]

## II.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which

---

[11] *See generally* Lackawanna Coll., Level Up Program, https://www .lackawanna.edu/offices-and-departments/admissions/level-up/ (last visited Feb. 9, 2024).

relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F.

Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F.

Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.   DISCUSSION

The plaintiffs have filed a four-count amended complaint against

the School District only.[12] It does not name *any* individual defendants. In

Count I, the plaintiffs assert a § 1983 Fourteenth Amendment equal

protection claim. In Count II, the plaintiffs assert a § 1983 Fourteenth

Amendment "stigma plus" procedural due process claim. In Count III, the

plaintiffs assert a traditional § 1983 Fourteenth Amendment procedural

due process claim. In Count IV, the plaintiffs assert § 1983 Fourteenth

---

[12] Count I of the amended complaint is largely reproduced from Count I of the original complaint, with some additional allegations regarding School District policies and procedures. Count II of the amended complaint is largely reproduced from Count III of the original complaint, with an added allegation that G.M. has been constructively excluded from meaningful attendance or participation in his high school classes or curriculum. Count III of the amended complaint is largely reproduced from Count II of the original complaint, but substituting references to *procedural* due process in place of the previously dismissed *substantive* due process claim, and with an added allegation that the School District's polices and procedures were constitutionally inadequate to remedy the alleged deprivation of his protected state-created right to a public education. Count IV of the amended complaint is altogether new, asserting substantive due process claims under "special relationship" and "state-created danger theories." The original complaint also included state-law tort claims and a claim for punitive damages, all of which have been omitted from the amended complaint.

Amendment "special relationship" and "state-created danger" substantive due process claims. For relief, the complaint demands an award of compensatory damages.

## A. Individual-Capacity Parent Claims

Although the four causes of action asserted in the amended complaint pertain only to the federal civil rights of G.M., with the minor student's parents asserting these claims on his behalf, the amended complaint's caption, its introductory paragraph, and its several demand-for-relief recitations include references to G.M.'s parents in their *individual* capacities. The defendant has moved to dismiss any individual claims brought by the parents for failure to state a claim upon which relief can be granted.

In their brief in opposition, the plaintiffs have expressly conceded this point. *See* Br. in Opp'n 16, Doc. 18. The filing of a brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim. *See Dribelbis v. Scholton*, 274 Fed. App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to an argument where plaintiff had opportunity to address it in his opposition brief but failed to

- 15 -

do so); *Levy-Tatum v. Navient Solutions, Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (collecting cases); *D'Angio v. Borough of Nescopeck*, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999) (finding claims waived where plaintiff failed to address defendant's argument in his brief in opposition to a motion to dismiss); *see also LM Gen. Ins. Co. v. LeBrun*, 470 F. Supp. 3d 440, 460 (E.D. Pa. 2020); *Celestial Cmty. Dev. Corp. v. City of Philadelphia*, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012).

Accordingly, any claims asserted on behalf of the parent-plaintiffs, Christopher and Kerry Mathews, in their individual capacities, will be dismissed as waived and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## B. § 1983 Equal Protection Claim

In Count I of the complaint, the plaintiffs assert a § 1983 Fourteenth Amendment equal protection claim on behalf of G.M. The defendant has moved to dismiss this equal protection claim for failure to state a claim upon which relief can be granted.

In their brief in opposition, the plaintiffs have expressly conceded this point. *See* Br. in Opp'n 11, Doc. 18. As noted above, the filing of a

brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim. *See Dribelbis*, 274 Fed. App'x at 185; *Levy-Tatum*, 183 F. Supp. 3d at 712; *D'Angio*, 34 F. Supp. 2d at 265; *see also LeBrun*, 470 F. Supp. 3d at 460; *Celestial Cmty. Dev. Corp.*, 901 F. Supp. 2d at 578.

Accordingly, the plaintiffs' § 1983 Fourteenth Amendment equal protection claim will be dismissed as waived and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## C. § 1983 Substantive Due Process Claims

In Count IV of the complaint, the plaintiffs assert § 1983 Fourteenth Amendment "special relationship" and "state-created danger" substantive due process claims.[13]

---

[13] In asserting these claims in the amended complaint, the plaintiff has referenced both *procedural* and *substantive* due process. But the "special relationship" and "state-created danger" doctrines are substantive due process theories of liability, with no application to a procedural due process claim. *See, e.g., Coleman v. Cnty. of Suffolk*, 174 F. Supp. 3d 747, 74 n.7 (E.D.N.Y. 2016); *A.M. ex. Rel. Youngers v. N.M. Dep't of Health*, No. CIV 13-0692, 2015 WL 13668431, at *47 n.21 (D.N.M. Dec. 7, 2015). *See generally Estate of Massey v. City of Philadelphia*, 118
*(continued on next page)*

Although the amended complaint's heading for Count IV references a "special relationship," the body of the amended complaint does not allege any particular basis for this theory of liability. Presumably, the plaintiffs rely on the relationship between the School District and its students, but it is well established that a special relationship will not arise solely from "compulsory school attendance laws and the concomitant *in loco parentis* authority and discretion that schools necessarily exercise over students, or the school's failure to do more to protect" its students in any particular situation. *See Morrow v. Balaski*, 719 F.3d 160, 170 (3d Cir. 2013) (en banc).

The allegations of Count IV are more clearly directed toward a state-created danger theory of substantive due process liability. To state a claim under this theory, a plaintiff must plausibly allege the following four elements:

> 1) the harm ultimately caused was foreseeable and

---

F. Supp. 3d 679, 689 (E.D. Pa. 2015) ("As an exception to the general principle that a state does not have an affirmative duty to protect a student from harm, a state may be held liable for injury when the state (1) entered into a 'special relationship' with the plaintiff, or (2) created a danger which resulted in foreseeable injury to a discrete plaintiff.") (citing *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013) (en banc), and *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996)).

direct;

2) a state actor acted with a degree of culpability that shocks the conscience;

3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* at 177 (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

Here, the allegations of the amended complaint are insufficient to plausibly establish the first element of a state-created danger claim. In conclusory fashion, the plaintiffs have alleged that G.M. "suffered severe and permanent psychological damage, emotional distress, and decreased educational opportunities." Am. Compl. ¶ 141, Doc. 14. The amended complaint fails to plausibly allege a foreseeable and fairly direct harm because it alleges no facts whatsoever in support of these vague and conclusory allegations of inchoate injury. Without more, mental or emotional distress is insufficient to constitute the requisite harm in a

state-created danger claim. *See Carey v. City of Wilkes-Barre*, 410 Fed. App'x 479, 483 (3d Cir. 2011) (holding that the plaintiff's allegation of anxiety did "not rise to the level of foreseeable and fairly direct harm," and "the emotional distress alleged by [the plaintiff] is not a cognizable harm"); *see also Doe #1 v. Delaware Valley Sch. Dist.*, 572 F. Supp. 3d 38, 75 n.11 (M.D. Pa. 2021); *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 667 (E.D. Pa. 2020).

Accordingly, the plaintiffs' § 1983 Fourteenth Amendment special relationship and state-created danger substantive due process claims (Count IV) will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### D. Traditional § 1983 Procedural Due Process Claim

In Count III of the amended complaint, the plaintiffs assert a traditional § 1983 Fourteenth Amendment procedural due process claim.

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the

procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006).

In this count, the plaintiffs have identified a state-created right to a public education as the individual interest protected by procedural due process. *See* Am. Compl. ¶ 121. They allege, in vague and conclusory fashion, that G.M. was deprived of this right because the reputational harm caused by the School District's allegedly mishandled investigation "has significantly hindered his ability to perform as a student," *id.* ¶ 92, "he has been essentially excluded from meaningful attendance and/or participation in his classes and/or high school curriculum," *id.* ¶ 93, and "he has been constructively excluded from meaningful attendance and/or participation in his classes and/or high school curriculum." *Id.* ¶ 116. The amended complaint further alleges that G.M. has exhibited signs or symptoms of anxiety and depression, including fatigue, insomnia, loss of interests, low self-esteem, and lack of concentration, which has adversely impacted his subsequent attendance record and academic performance. *See id.* ¶¶ 85–91. Nevertheless, the amended complaint expressly acknowledges that G.M. was able to return to school on December 22, 2021, immediately after his COVID quarantine expired, *see id.* ¶¶ 19, 42,

and it does not allege that school officials excluded G.M. from attending school at *any* time due to the December 20, 2021, incident and related investigation.

It is well established that, where state law has established a public school system and required children to attend, students possess a "legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975). But, notwithstanding the disheartening impact this incident and its fallout may have had on G.M.'s mental and emotional status, and his academic performance as an indirect result, it is also well established that, "[s]o long as administrative policies and actions do not exclude a student from class, they do not implicate the property interest in public education." *Oberheim v. Bason*, 565 F. Supp. 3d 607, 616 (M.D. Pa. 2021) (citing *Wise v. Pea Ridge Sch. Dist.*, 855 F.2d 560, 563 n.3 (8th Cir. 1988), and *Laney v. Farley*, 501 F.3d 577, 582–83 (6th Cir. 2007)). The amended complaint does not allege that school officials excluded G.M. from attending school at any time—deliberately or otherwise—and it does not allege sufficient facts to plausibly establish that the allegedly mishandled investigation created such a hostile environment at school for G.M. that

he was forced to leave. *See Bichel v. Kennedale Indep. Sch. Dist.*, No. 23-cv-00804, 2023 WL 8628329, at *3 (N.D. Tex. Dec. 13, 2023) (plaintiff must allege sufficient details to plausibly demonstrate that a hostile environment created by defective investigative process deprived her of a protected property interest in public education); *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881, 2012 WL 4477552, at *8 (S.D.N.Y. Sept. 27, 2012) (finding school district did not deprive student of property interest in public education when it did not actually prevent her from attending the school; rather, the student's parents chose to remove her from public school and place her in a private school due to bullying and harassment); *Garcia v. Clovis Mun. Schs.*, No. CIV 02-1101, 2003 WL 27385436, at *4 (D.N.M. Mar. 3, 2003) ("If there is a cause of action under Section 1983 for constructive expulsion, a plaintiff would have to allege that school officials deliberately created an intolerable environment in order to force a student to leave and that the conditions within the school were so objectively intolerable that the student had no choice but to leave."). Thus, under the circumstances described in the amended complaint, the plaintiffs have failed to plausibly allege the deprivation of a protected property interest in a public education.

Accordingly, the plaintiffs' traditional § 1983 Fourteenth Amendment procedural due process claim (Count III) will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### E. § 1983 "Stigma Plus" Procedural Due Process Claim

In Count II of the complaint, the plaintiffs assert a § 1983 Fourteenth Amendment "stigma plus" procedural due process claim.[14]

In this count, the plaintiffs allege that G.M. suffered harm to his reputation, which in turn affected his ability to perform his "job" of attending school as a result of the School District's mishandling of investigation into and communication about the December 20, 2021, incident, thus depriving him of a liberty interest protected by the due

---

[14] We note that the defendant's brief discusses this claim as a *substantive* due process claim. But "stigma-plus is actually 'a species within the phylum of procedural due process claims,' not a variation of substantive due process." *Miller v. Fayette Cnty.*, No. 15-cv-1590, 2016 WL 1555526, at *4 (W.D. Pa. Apr. 18, 2016) (citations omitted); *accord Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 502 (6th Cir. 2007); *Magassa v. Wolf*, 545 F. Supp. 3d 898, 910 (W.D. Wash. 2021); *Tahuni v. Holder*, 8 F. Supp. 3d 1253, 1272 (D. Or. 2014); *Campanella v. Cnty. of Monroe*, 853 F. Supp. 2d 364, 384 n.7 (W.D.N.Y. 2012); *Doe v. Nebraska*, 734 F. Supp. 2d 882, 926 (D. Neb. 2010).

process clause.[15] But, as the Third Circuit has explained,

> reputation *alone* is not an interest protected by the Due
> Process Clause. Rather, to make out a due process
> claim for deprivation of a liberty interest in reputation,
> a plaintiff must show a stigma to his reputation *plus*
> deprivation of some additional right or interest. We
> have referred to this as the "stigma-plus" test.

*Hill*, 455 F.3d at 236 (footnote, citations, and internal quotation marks

omitted); *see also D&D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 552

Fed. App'x 110, 113 (3d Cir. 2014) ("[R]eputation damage is not

actionable unless it occurs in the course or is accompanied by a change or

extinguishment of a right or status guaranteed by state law or the

Constitution.") (internal quotation marks omitted). "[A] *sine qua non* of a

'stigma-plus' suit is that the 'plus' must be the result of state action

directly affecting the plaintiff's rights or status under the law. The fact

that state action may be involved in the 'stigma' (*i.e.*, defamation) is not

of itself sufficient to maintain the action." *Sullivan v. New Jersey*, 602 F.

Supp. 1216, 1222 (D.N.J. 1985).

Here, the "plus" proffered by the plaintiffs amounts to emotional

---

[15] As noted in the preceding section, the plaintiffs do not allege that
G.M. was actually excluded from attending school, and thus no protected
state-created property interest is at issue. *See generally Oberheim*, 565
F. Supp. 3d 607, 615–16 (M.D. Pa. 2021).

distress which then allegedly resulted, only indirectly, in G.M.'s diminished academic performance, which the plaintiffs' characterize as "constructive exclusion" from "meaningful attendance or participation" in school.[16] Such emotional distress or psychological harm is simply "too ethereal" to satisfy the "plus" element of the "stigma-plus" test. *See Good v. City of Sunbury*, 352 Fed. App'x 688, 692 (3d Cir. 2009); *see also Baraka v. McGreevey*, 481 F.3d 187, 209 & n.17 (3d Cir. 2007); *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1076, 1078 (3d Cir. 1997). Moreover, the impact of this emotional distress on G.M.'s subsequent academic performance is neither *directly* connected to state action nor does it constitute the *extinguishment* of G.M's right to a public education.[17] *See*

---

[16] The amended complaint includes newly added allegations that: "The reputational harm suffered by G.M., and the emotional and mental toll it has taken, has significantly hindered his ability to perform as a student. As such, he has been essentially excluded from meaningful attendance and/or participation in his classes and/or high school curriculum." Am. Compl. ¶¶ 92–93. Based on this, the plaintiffs now have also newly alleged that G.M. "has been constructively excluded from meaningful attendance and/or participation in his classes and/or high school curriculum." *Id.* ¶ 116.

[17] Indeed, as we have explained in the previous section of this opinion, the sparse facts alleged fail to plausibly establish a hostile environment sufficient to constitute constructive expulsion or exclusion of G.M. from public education. We do not doubt that this unfortunate incident has caused real mental and emotional harm to the student,

*(continued on next page)*

*D&D Assocs.*, 552 Fed. App'x at 113; *Sullivan*, 602 F. Supp. at 1222. The reputational damage caused by the School District's allegedly mishandled investigation and communication with respect to G.M. and the December 20, 2021, incident simply does not rise to the level of a constitutional deprivation. *See Marcolongo v. Sch. Dist. of Philadelphia*, No. Civ.A. 98-5196, 1999 WL 1011899, at *8 (E.D. Pa. Nov. 5, 1999), *aff'd*, 262 F.3d 404 (3d Cir. 2001) (unpublished table decision).

Accordingly, the plaintiffs' § 1983 "stigma plus" procedural due process claim (Count II) will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**F. Leave to Amend**

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108

---

adversely impacting his academic performance and other aspects of his social and educational experience, but it simply does not rise to the level of disruption or exclusion where it satisfies the "plus" element of a "stigma-plus" procedural due process claim.

(3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, based on the facts alleged in the amended complaint, it is clear that any further amendment would be futile with respect to most of the plaintiffs' claims, particularly in light of the plaintiff's failure to cure the previously identified pleading deficiencies of their original complaint. With respect to the plaintiffs' newly asserted state-created danger theory of recovery for their substantive due process claim, however, it is not so clear that amendment of this claim would be futile. Therefore, the plaintiffs will be granted leave to file a second amended complaint, with the scope of amendments limited to the plaintiffs' state-created danger substantive due process claim, previously set forth in Count IV of the amended complaint.

## IV.  CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss (Doc. 16) will be granted and the amended complaint (Doc. 14) will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiffs, however, will be granted leave to file a second amended

complaint, subject to the limitations stated above.

An appropriate order follows.


Dated: February __21__, 2024

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge