## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER MATHEWS and
KERRY MATHEWS, individually,
and as parents and natural
guardians of George Mathews, and
GEORGE MATHEWS, in his own
right,

           Plaintiffs,

           v.

ABINGTON HEIGHTS SCHOOL
DISTRICT,

           Defendant.

CIVIL ACTION NO. 3:22-CV-00959

(SAPORITO, J.)

## MEMORANDUM

This is a federal civil rights action, initially brought by the
plaintiff's parents, Christopher and Kerry Mathews, on behalf of their
child, George Mathews, the plaintiff.[1] Appearing through counsel, the
plaintiff commenced this action by filing a complaint in state court on

---

[1] George Mathews was a minor when this action was commenced in
state court, so this action was initially brought by his parents as next
friends, appearing through counsel on his behalf. Mathews reached the
age of majority in 2023, and the parties have recently stipulated that the
caption and all references in the pleadings would be amended to reflect
his actual name instead of his initials. Doc. 34; Doc. 35. The original
complaint included claims asserted by the plaintiff's parents in their
personal capacity as well, but those claims have all been dismissed.

May 26, 2022. Doc. 2. The lone named defendant, Abington Heights School District (the "School District"), timely removed the action to this court on June 15, 2022. Doc. 1.

We have previously considered and granted a motion to dismiss the this action, twice. *See Mathews v. Abington Heights Sch. Dist.*, No. 3:22-CV-00959, 2023 WL 261971 (M.D. Pa. Mar. 22, 2023) (dismissing original complaint), Doc. 12 & 13; *Mathews v. Abington Heights Sch. Dist.*, No. 3:22-CV-00959, 2024 WL 711610 (M.D. Pa. Feb. 21, 2024) (dismissing first amended complaint), Doc. 20 & 21.

On March 6, 2024, the plaintiff filed his second amended complaint. Doc. 22. The defendant has filed a Rule 12(b)(6) motion to dismiss the second amended complaint for failure to state a claim upon which relief can be granted. Doc. 24. The motion is fully briefed and ripe for decision. Doc. 25; Doc. 32; Doc. 33.

## I. ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

For the most part, the second amended complaint repeats the factual allegations of the original and first amended complaint verbatim,

with some additional material pleaded.[2]

In December 2021, Mathews was a 10th grade student at Abington Heights High School.[3] He was an exemplary honor roll student with no disciplinary history at Abington Heights High School.

In the early morning hours of December 20, 2021, shortly after midnight, Mathews's parents received a telephone call from police requesting that they meet with officers outside their home to discuss an issue involving Mathews and an anonymous tip that had been submitted through the Safe2Say Something anonymous reporting system ("Safe2Say").[4]

Mathews's parents met with two police officers inside the garage of their home. During that meeting, the police officers informed the parents what the Safe2Say anonymous reporting system was, and they informed Mathews's parents that an anonymous tip about Mathews had been

---

[2] The newly added material consists mostly of commentary, argument, or legal conclusions, rather than new fact allegations. Where material, any new fact allegations are included in this fact summary.

[3] He has since graduated from high school.

[4] Safe2Say is an anonymous reporting system established by the Commonwealth of Pennsylvania for individuals who may be a risk to themselves or others, and any member of a school community, including students, can make a report anonymously via an app, through a website at Safe2SayPA.org, or by calling 1-844-SAF2SAY (1-844-723-2729).

submitted. Specifically, the police officers informed Mathews's parents that an anonymous tip was submitted indicating that Mathews had made statements that he had two firearms in his possession and that he was going to Abington Heights High School on Monday, December 20, 2021, to "shoot people on his list."

At the time, Mathews had no access to any firearms. In fact, he had been in quarantine due to COVID-19 exposure and would not be eligible to return to school until December 22, 2021.

The police officers requested to speak to Mathews, who told the officers that he did not have access to any firearms, that he never made any statements about shooting anyone, and that he never created a list of people he intended to shoot at Abington Heights High School.

At that time, the police officers indicated that they believed the anonymous tip to have been false. But Mathews and his parents were also informed that he should consider himself suspended from school pending the school's investigation. They were advised that they should await a telephone call from the superintendent of the School District before Mathews could return to school.

Shortly after the police officers departed, Mathews's mother

advised him to contact his friends in an attempt to identify who made the anonymous false tip via Safe2Say, and why they made that tip. Mathews spoke with his fellow classmates, L.R. and P.M., both minors at the time, who informed Mathews that another minor classmate, S.J., had "joked" about submitting an anonymous false tip regarding Mathews via Safe2Say. According to L.R. and P.M., they had been engaged in a game of Fortnite[5] together with Mathews and S.J., which led to a plot to make an anonymous false tip about Mathews.

During a game of Fortnite, the four players had discussed how the high school was "a ghost town" on the prior Friday night due to threats that had circulated via social media regarding possible mass shootings in schools across the nation.[6] At that point in the conversation, S.J. stated

---

[5] *See generally Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 378 (E.D. Pa. 2020) ("Fortnite is a battle royale video game, a 'genre that blends the survival, exploration and scavenging elements of a survival game with last-man-standing gameplay.' In this format, 'up to 100 players, alone, in pairs or in groups, compete to be the last player or group alive' by using weapons and other forms of violence to eliminate other players.") (citation omitted).

[6] *See, e.g.*, Hannah Natanson & Laura Meckler, *Threats, Hoaxes Add to School Stressors*, Wash. Post, Dec. 21, 2021, at A1 ("[I]n a 'challenge' last week that swept the social network TikTok, students promoted school shootings to take place this past Friday—for many, the last day of class before winter break. Schools from D.C. to California closed for the day or added police.").

that he should submit an anonymous false tip regarding Mathews via Safe2Say. S.J. then recorded and shared footage of himself via the Snapchat application making the anonymous false tip, but the recording disappeared once it was viewed, before the other players could record or save it.[7]

At approximately 1:30 a.m. on December 20, 2021, L.R. and P.M. repeated their statements to a police officer regarding S.J.'s plan to submit an anonymous tip about Mathews.

That same day, Mathews's mother received a telephone call from the Vice Principal at Abington Heights High School,[8] who indicated that, after having interviewed S.J., and despite S.J.'s statements in his own defense, the Vice Principal ultimately believed the tip to be false and Mathews to be the "victim." Nevertheless, and despite his innocence, the Vice Principal suggested that Mathews refrain from returning to school until after the impending winter holiday vacation, and she indicated that she was continuing to investigate and interview students involved.

---

[7] *See generally Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 594 U.S. 180, 184 (2021) ("Snapchat [is] a social media application that allows users to post photos and videos that disappear after a set period of time.").

[8] The second amended complaint does not identify the non-party vice principal, but merely refers to her by title.

Even though police and the Vice Principal had already deemed the tip to be false, she still chose to conduct interviews of certain students involved in the incident, including L.M. When interviewing L.M., the Vice Principal asked open-ended questions such as "Does [Mathews] make you nervous?" and "Do you feel as though [Mathews] would shoot someone?" The events of December 20, 2021, were not discussed with L.M. during this interview; instead, the focus was on the unfounded possibility that Mathews had a propensity for violence. Upon information and belief, the plaintiffs allege that none of the students interviewed regarding this incident were advised of the sensitivity of the matter and the damage it could cause to Mathews.

On December 21, 2021, Mathews's mother was contacted by the Vice Principal, who told her that Mathews had been "cleared of the matter" and that School District faculty or staff felt that Mathews was "the victim." The Vice Principal further informed Mathews's mother that S.J. had been suspended and that Mathews's suspension was being lifted and his absences attributed to COVID-19, and she instructed the plaintiff's mother to contact her immediately if he faced any negative repercussions as a result of the incident.

Faculty and staff were not informed of Mathews's exoneration at that point in time.

Mathews was able to return to school on December 22, 2021. Naturally, he was extremely nervous to return to school, as he was unsure how his fellow students would respond to his presence considering the false tip.

Mathews was contacted by a friend and fellow student, K.B., who informed Mathews that an unidentified student was asking other students: "Where is your blue shirt so that [Mathews] does not shoot you?"

Mathews's mother immediately tried to contact the Vice Principal, who was unavailable, and she ultimately spoke with the Principal at Abington Heights High School.[9] The Principal assured Mathews's mother that the comments would be investigated and addressed, and he acknowledged that wearing blue was a detail mentioned in the false tip regarding Mathews.

Mathews's mother grew concerned that these specific details had

---

[9] The second amended complaint does not identify the non-party principal, but merely refers to him by title.

been shared within the high school, as she believed rumors about Mathews being a potential school shooter could essentially destroy his life.[10] At that point, the Principal informed Mathews's mother that he would not send an email or text message to faculty or staff for fear of "calling more attention" to the situation, but that faculty and staff at Abington Heights High School would be made aware that Mathews was innocent.

When Mathews returned to school on December 22, 2021, an unidentified student addressed him as "shooter" during first period.

During third period that same day, in a class of approximately twenty students, Mathews was addressed by his third period teacher, a non-party identified in the pleadings only as "Teacher," who said: "I am hearing rumors. Are they true?"[11] Teacher initiated a dialogue between the students in the classroom regarding the situation, and Mathews's third period classmates all began to chime in regarding what they had heard about the situation. When Mathews attempted to defend himself,

---

[10] It is not clear from the second amended complaint whether she expressed this concern to the Principal during that phone call.

[11] The second amended complaint does not identify the non-party teacher, but merely refers to him by position title.

Teacher interjected and began to lecture Mathews, stating "What were you thinking?" and insinuating that S.J.'s false tip that Mathews had made certain threats was true. Another teacher then entered the classroom, at which point Teacher pointed to Mathews and asked: "Did you hear what this kid did?"

Teacher's statements created a ripple effect, and during sixth period that same day, Mathews was approached by a group of students who asked him if the rumors were true, at which point he had to explain the situation and reiterated that the rumors *were not* true. As Mathews was leaving school that day, another student yelled at Mathews in the hallway, calling him "shooter."

Mathews's mother once again tried to contact the Vice Principal, who was unavailable, and she once again spoke with the Principal. The plaintiff's mother expressed her concern that faculty and staff continued to perpetuate the incorrect belief that Mathews had made statements regarding a potential school shooting. The Principal promised that faculty and staff would be stationed in the hallways so Mathews was not harassed by his fellow students. The Principal, however, refused to release any information to Mathews's mother regarding disciplinary

action being taken against S.J., other than noting that students in this type of situation could face a maximum of ten days of suspension, and that the School District would need to determine if any additional action needed to be taken.

While Mathews's mother was speaking with the Principal, the Vice Principal left a voicemail for her apologizing for her son's "experience" that day. In that voicemail, the Vice Principal stated that she did not address the specific statements made to Mathews that day because she was "unable to get that kid before the day ended." She further stated that she did not think this was "a widespread situation" because she had only spoke with two students about it.

Mathews's mother then contacted the Assistant Principal at Abington Heights High School[12] and once again expressed her concerns that Mathews's reputation and well-being had suffered irreparable damage as a result of the incident and the manner in which it was handled by the high school and the School District. In light of the repeated requests by Mathews's mother, the Assistant Principal agreed

---

[12] The second amended complaint does not identify the non-party assistant principal, but merely refers to him or her by title.

to send an e-mail to all faculty and staff of Abington Heights High School exonerating Mathews.

The Assistant Principal subsequently sent an email to faculty and staff on December 23, 2021, stating that the "Safe2Say report accusing [Mathews] of possibly threatening the school" was investigated and found to be false. Unfortunately, by that time, false rumors about Mathews had already spread throughout the student population of Abington Heights High School.

Before the impending winter holiday vacation, Mathews approached Teacher, once again informed Teacher that he was in fact innocent, and informed Teacher that he did not appreciate the way Teacher handled the situation in third period on December 22, 2021. Teacher admitted to mishandling the situation and apologized.

The second amended complaint alleges that, as a result of the acts or omissions of the School District, Mathews's reputation has been forever tarnished by false rumors that he plotted to initiate a school shooting. The second amended complaint further alleges that, since December 20, 2021, Mathews has exhibited signs or symptoms of anxiety and depression, including fatigue, insomnia, loss of interests, low self-

esteem, and lack of concentration, which has contributed to absenteeism and tardiness at school. Mathews's previously excellent academic performance has suffered as well, with his grades decreasing drastically, making him ineligible for participation in a "Level Up Lackawanna" program that allows high-achieving students to earn an early associate degree in select majors by the time they graduate from high school through a combination of dual enrollment classes.[13]

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged

---

[13] *See generally* Lackawanna Coll., Level Up Program, https://www.lackawanna.edu/offices-and-departments/admissions/level-up/    (last visited Mar. 4, 2025).

on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.  DISCUSSION

The plaintiff has filed a one-count second amended complaint against the School District,[14] asserting a § 1983 Fourteenth Amendment

---

[14] Count I of the second amended complaint appears to be a revised version of Count IV of the first amended complaint, asserting a § 1983

*(continued on next page)*

"state-created danger" substantive due process claim based on the verbal harassment experienced by Mathews upon his return to school. For relief, the complaint demands an award of compensatory damages.

## A. State-Created Danger

It is well established that "[a]s a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). "The Due Process Clause forbids the State *itself* from depriving 'individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.'" *Morrow*, 719 F.3d at 166 (quoting *DeShaney*, 489 U.S. at 195) (emphasis in original).

As recognized by the Third Circuit, the "state-created danger doctrine" is "a narrow exception to the general rule that the state has no

---

Fourteenth Amendment substantive due process claim under a state-created danger theory. The first amended complaint also included § 1983 Fourteenth Amendment claims under equal protection, traditional procedural due process, and "stigma-plus" procedural due process theories. In his original complaint, the plaintiff also asserted state-law tort claims and a claim for punitive damages. All of these other claims have been omitted from the second amended complaint.

duty to protect its citizens from private harms." *Henry v. City of Erie*, 728

F.3d 275, 286 (3d Cir. 2013); *see also Vorobyev v. Wolfe*, 638 F. Supp. 3d

410, 424 (M.D. Pa. 2022) ("The Third Circuit has . . . recognized, but

narrowly construed, the state-created danger doctrine as a carefully

crafted and specifically defined exception to *DeShaney's* scope."). Under

this theory, "liability may attach where the state acts to *create* or *enhance*

a danger that deprives the plaintiff of his or her Fourteenth Amendment

right to substantive due process." *Morrow*, 719 F.3d at 177 (citing *Kneipp*

*v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996)) (emphasis in original). To

state a claim under this theory, a plaintiff must plausibly allege the

following four elements:

> 1) the harm ultimately caused was foreseeable and
> direct;
>
> 2) a state actor acted with a degree of culpability that
> shocks the conscience;
>
> 3) a relationship between the state and the plaintiff
> existed such that the plaintiff was a foreseeable victim
> of the defendant's acts, or a member of a discrete class
> of persons subjected to the potential harm brought
> about by the state's actions, as opposed to a member of
> the public in general; and
>
> 4) a state actor affirmatively used his or her authority
> in a way that created a danger to the citizen or that
> rendered the citizen more vulnerable to danger than
> had the state not acted at all.

*Id.* (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

In considering and dismissing this same claim as alleged in the first amended complaint, we found the plaintiff had failed to plausibly allege the first element of a state-created danger claim—a foreseeable and fairly direct harm—because the first amended complaint alleged only mental or emotional harm, which is not a cognizable basis for recovery under a state-created danger claim, and, moreover, it did so in a vague and conclusory fashion. *See Mathews*, 2024 WL 711610, at *7; Doc. 20, at 19–20; *see also Carey v. City of Wilkes-Barre*, 410 Fed. App'x 479, 483 (3d Cir. 2011) (holding that the plaintiff's allegation of anxiety did "not rise to the level of foreseeable and fairly direct harm," and "the emotional distress alleged by [the plaintiff] is not a cognizable harm"); *J.B. ex rel. J.B. v. Greater Latrobe Sch. Dist.*, No. 2:21-cv-00690, 2023 WL 5510365, at *8 (W.D. Pa. Aug. 25, 2023) ("Emotional distress is not a cognizable harm for purposes of setting forth a state-created danger claim."); *id.* at *9 ("Plaintiff's diagnosis of PTSD is not alone sufficient to establish physical injury."); *Gohl v. Livonia Pub. Schs.*, 134 F. Supp. 3d 1066, 1086 (E.D. Mich. 2015) ("Courts have repeatedly held that allegations of

emotional injury, without some measure of physical injury, are insufficient for a substantive due process claim.").

In an effort to cure this pleading defect, the second amended complaint has added a conclusory allegation that, as a result of the School District's "action and/or inaction," Mathews suffered "[p]hysical injuries including headaches, sleeplessness/insomnia, sleep disturbances, fatigue, somatization, [and] loss of appetite" as somatic manifestations of mental or emotional distress.[15] Second Am. Compl. ¶¶ 102, 127, Doc. 22.

---

[15] In addition, the second amended complaint also alleges that Mathews was suspended during the investigation and excluded from attending school on December 20 and 21, 2021, which "undoubtedly deprived" him of a protected property interest in a public education. *See* Second Am. Compl. ¶¶ 103–04, 129–30, Doc. 22. This allegation, which is immaterial to the plaintiff's substantive due process claim, appears to seek to rehabilitate a previously dismissed traditional procedural due process claim. *See Mathews*, 2024 WL 711610, at *7–8 (dismissing procedural due process claim because nominal "suspension" did not actually prevent plaintiff from attending school due to overlapping and preexisting period of COVID quarantine). But when the court granted the plaintiff leave to file a second amended complaint, the scope of amendment was expressly limited to pleading a state-created danger substantive due process claim. *See id.* at *9; *see also* Doc. 21 ¶ 3. Moreover, we decline to credit this apparent attempt to artfully plead around the grounds for that dismissal because any allegation that Mathews was prevented from attending school on December 20 and 21, 2021, due to suspension is flatly contradicted by the plaintiff's prior admissions in his verified original and first amended complaints. *Compare* Compl. ¶ 19 ("G.M. had been in quarantine due to COVID-19

*(continued on next page)*

But the plaintiff has failed to allege sufficient facts to plausibly establish that these somatic symptoms of emotional distress were a foreseeable and fairly direct result of the School District's allegedly wrongful "action and/or inaction"—that is, its failure to promptly and adequately communicate the plaintiff's exoneration to school faculty, staff, and students so as to prevent or minimize the rumors and harassment he

_____

exposure since December 16, 2021, and would not be able to return to school until December 22, 2021."), Doc. 2, *and* Am. Compl. ¶ 19 ("G.M. had been in quarantine due to COVID-19 exposure since December 16, 2021, and would not be able to return to school until December 22, 2021."), Doc. 14, *with* Second Am. Compl. ¶ 19 ("G.M. had been in quarantine due to COVID-19 exposure since December 16, 2021, and *did not plan to return to school until the following week*.") (emphasis added). Although the original and first amended complaints have been superseded by subsequent pleadings and rendered of no legal effect, we may take judicial notice of factual admissions in the superseded pleadings, which are part of the public record. *See Pa. R. R. Co. v. City of Girard*, 210 F.2d 437, 440 (6th Cir. 1954) ("[P]leadings withdrawn or superseded by amended pleadings are admissions against the pleader in the action in which they were filed."); *see also Rowbottom v. City of Harrisburg*, No. 19-cv-00657, 2020 WL 6866262, at *1 n.1 (M.D Pa. Jan. 23, 2020) (taking judicial notice of factual admissions in superseded pleadings). *See generally In re Washington Mut. Inc.*, 741 Fed. App'x at 91 n.3 ("We need not . . . credit factual allegations contradicted by matters of which we may take judicial notice."); *Sourovelis*, 246 F. Supp. 3d at 1075 ("[W]hile Plaintiffs' well-pleaded allegations must be accepted as true for purposes of this motion, the Court need not accept as true allegations that are directly contradicted by . . . matters of public record."); *Banks*, 568 F. Supp. 2d at 588 ("Neither does the court have to accept as true anything in the complaint which contradicts facts of which the court may take judicial notice.").

experienced as a result of the false tip. *See Burk v. Townsend*, No. CV-22-01967, 2024 WL 3973764, at *10 (D. Ariz. Aug. 22, 2024) ("Plaintiff's allegations of emotional harm but no actual physical injury caused by Defendants' actions are insufficient to state a Fourteenth Amendment substantive due process claim.") (citations omitted); *cf. Strobel v. United States*, No. 24-3105, 2024 WL 5187589, at *2 n.1 (D. Kan. Dec. 20, 2024) (discussing case law finding that somatic manifestations of emotional distress, such as appetite loss, insomnia, headaches, and fatigue, are insufficient to establish "physical injury" in the PLRA context).

The plaintiff's second amended complaint also fails to plausibly allege the fourth element of a state-created danger claim—an affirmative act by the School District that created a danger to Mathews or that rendered Mathews more vulnerable to danger than had the School District not acted at all. The second amended complaint repeatedly refers to unspecified "action and/or inaction" by the School District as the wrongful conduct that caused or enhanced the harassment experienced by Mathews upon his return to school. *See* Second Am. Compl. ¶¶ 110–13, 123–24, 127. In its brief in support, the School District notes that the only factual allegation in support of this claim concerns a *failure to act*,

rather than any affirmative act by school officials: namely, the alleged failure of school administrators to adequately communicate the results of their investigation to school faculty and staff, which in turn allowed rumors about Mathews to spread among the student population. Br. Supp. 8–9, Doc. 25. In his brief in opposition to the motion to dismiss, the plaintiff does not contest this characterization, but instead he has expressly declined to identify the affirmative act upon which his state-created danger theory rests. *See* Br. Opp'n 14 ("[T]here is no need to specifically identify an affirmative action."), Doc. 32.

Looking to the allegations of the second amended complaint, we agree that the plaintiff's claim rests entirely on the School District's alleged inaction or failure to act, pointing only to the School District's failure to timely communicate the results of its investigation—i.e., its findings that the anonymous Safe2Say tip was false and that Mathews made *no* threats of violence against the school or members of the school community—to counter rumors and false information circulating among the student population, and its failure to adequately train faculty and staff on how to appropriately address such rumored threats. *See* Second Am. Compl. ¶¶ 117–25. The School District's failure to take such action

does not constitute affirmative conduct that may trigger a duty to protect under the state-created danger doctrine. *See Bright*, 443 F.3d at 282 ("It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause."). Indeed, to characterize the School District's inaction as an "affirmative exercise of authority" would permit "the state-created danger *exception* [to] swallow the rule. . . . Any and all failures to act would be transformed into an affirmative exercise of authority." *Morrow*, 719 F.3d at 178 (emphasis in original); *see also Gayemen v. Sch. Dist. of City of Allentown*, 712 Fed. App'x 218, 221 (3d Cir. 2017) ("This Court has repeatedly rejected similar efforts to recharacterize inaction as action.").

The plaintiff has failed to identify any affirmative act by the School District that "rendered [him] more vulnerable to danger than had the state not acted at all." *Morrow*, 719 F.3d at 178 (quoting *Bright*, 443 F.3d at 281). A failure to act is not the affirmative exercise of authority: The School District's failure to communicate its findings to faculty and staff did not create a new danger, it did not cause Mathews to be harassed by other students, who learned of the false threat of violence from social media and the rumor mill rather than school officials, and it did not

render him more vulnerable to such harassment. *See Morgan v. Town of Lexington*, 823 F.3d 737, 744 (1st Cir. 2016) ("An alleged failure of the school to be effective in stopping bullying by other students is not action by the state to create or increase the danger."); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (holding that, if a plaintiff's "allegations, at their core, are omissions, not commissions—inactions rather than actions," the plaintiff has failed to sufficiently plead a state-created danger claim); *Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 237 (W.D. Pa. 2015) ("Courts must assess . . . whether state officials 'created or increased the risk' themselves, or whether they simply 'might have done more' to protect individuals from harm.") (citing *Morrow*, 719 F.3d at 179).

Accordingly, the plaintiff's § 1983 Fourteenth Amendment state-created danger substantive due process claim will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## B. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must

permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, based on the facts alleged in the second amended complaint, it is clear that any further amendment would be futile with respect to the plaintiff's remaining § 1983 Fourteenth Amendment state-created danger claim, particularly in light of the plaintiff's failure to cure the previously identified pleading deficiencies of his first amended complaint. Thus, the second amended complaint will be dismissed *without* leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss (Doc. 24) will be granted and the second amended complaint (Doc. 22) will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The clerk will be directed to mark this case as closed.

An appropriate order follows.

Dated: March 11, 2025                 *s/Joseph F. Saporito, Jr.*
                                      JOSEPH F. SAPORITO, JR.
                                      United States District Judge